IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

TRAVELERS INDEMNITY
COMPANY OF ILLINOIS,

    Plaintiff,

vs.                              CASE NO. CV-01-J-1760-NE

UNITED STATES FIDELITY &
GUARANTY INSURANCE
COMPANY and BILL HARBERT
CONSTRUCTION,

    Defendants.

## MEMORANDUM OPINION

Currently pending before the court are cross-motions for summary judgment (docs. 14 and 15), evidentiary submissions and memoranda of law filed by the parties.

### I. Factual Background

This is a dispute arising from policies of insurance and rights and duties between the parties pursuant to the contract of insurance between the defendants and the subcontract between defendant Bill Harbert Construction ("Harbert") and non-party American Pan & Engineering Company, Inc. ("APEC"), who is plaintiff's insured. The facts of this case are not in dispute.

The parties agreed to the following summary of the facts of this case: Non-party Huntsville/Madison County Airport Authority ("Huntsville Airport") entered a contract with defendant Harbert on April 23, 1998, to construct a parking deck for the Huntsville Airport. On May 3, 1998, defendant Harbert entered a subcontract with APEC to construct the

concrete formwork for the parking deck into which concrete would be poured. Exhibit B to plaintiff's motion for summary judgment. On March 23, 1999, the partially constructed parking deck caught fire. The fire destroyed a portion of the partially constructed parking deck and other items of property located on the construction site. The fire occurred after normal working hours and was reported by a nearby hotel worker to the fire department. Exhibit E to plaintiff's motion for summary judgment. The cause of the fire was never determined. This case arises out of the damage caused by that fire. APEC's formwork on the 4th and 5th floors in the parking deck was also destroyed by the fire. As a result of APEC's loss, and pursuant to a contract of insurance between APEC and plaintiff, plaintiff paid APEC $637,019.62 for overhead, labor and materials required to rebuild the formwork.

At all times relevant hereto, defendant Harbert was insured by defendant United States Fidelity & Guaranty Insurance Company ("USF&G"). As a result of losses from the fire, USF&G paid Harbert approximately $1,900,000.00. Depo. of Nata[1] at 28, submitted as Exhibit B to defendants' motion for summary judgment. USF&G has denied coverage to APEC for the forms and equipment it lost in the fire and also denied plaintiff's claim for this loss as APEC's subrogee.

In dispute is what obligations defendants had to APEC for the forms and for insurance coverage for the loss of the forms under the general contract between defendant Harbert and Huntsville Airport, the insurance policy of USF&G in favor of Harbert which Harbert

---

[1] Walter James Nata, Jr., is the adjustor for defendant USF&G who adjusted defendant Harbert's claims against defendant USF&G.

obtained pursuant to the general contract, and the subcontract between defendant Harbert and APEC.

The contract between Hunstville Airport and Harbert states that Harbert shall, at its own the expense:

> insure the Work against all loss or damage by fire, and against all loss or damage covered by the standard extended coverage endorsement ... with an insurance company or companies qualified to do business in the State of Alabama and acceptable to Owner, in an amount equaling the total amount of this Contract. <u>The All Risk/Builder's Risk Insurance Policy shall be in the name of the Owner, Contractor and all subcontractors,</u> as their interests appear (emphasis added).

*See* Exhibit F to defendants' motion for summary judgment, Supplemental Conditions, ¶ 11.1.1.6. The "work" is defined by the contract as follows:

> The term "Work" means the construction services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The work may constitute the whole or part of the project.

*See* Exhibit F to defendants' motion for summary judgment, General Conditions, ¶ 1.1.3.

Defendants insist this paragraph includes only permanent structures and moveable equipment owned by Harbert and hence excludes the forms constructed by APEC. However, in the subcontract between Harbert and APEC, the "Work" expected of the subcontractor is:

> all labor, supervision, services, materials, equipment, tools, scaffolds, transportation, storage and all other things necessary to prosecute and complete the work identified and described in Schedule A attached hereto (the "Work"), <u>being a portion of the Work required of Contractor under the Contract between Owner and Contractor</u> (emphasis added).

3

Exhibit B, tab 5 to plaintiff's motion for summary judgment. Additionally, the subcontract between defendant Harbert and APEC states:

> 7. Subcontractor shall complete all Work identified herein in accordance with the contract documents. The Work shall include all or any portion of the Parking Deck and Associated Lot Improvements ("the Project'). All Materials are to be purchased and paid for by Owner in accordance with the provisions of the Procurement Agreement, which is hereby made a part of the Agreement between Subcontractor and Contractor ....
>
> 8. This subcontract includes, but in no way is limited to the following ....
>
>> n) Furnishing of materials and labor necessary for the erection and removal of all concrete formwork unless listed as an exclusion herein ....

Schedule A to subcontract, submitted as Exhibit B, tab 4 to plaintiff's motion for summary judgment; and Exhibit C to defendants' motion for summary judgment.

Pursuant to the subcontract between defendant Harbert and APEC, APEC was required to:

> procure and maintain, during the period that this Subcontract remains in force, insurance coverage with limits of not less than those set forth in Schedule F. Subcontractor will require all insurance companies, issuing policies of insurance for Subcontractor, to certify (in duplicate) to the Contractor, prior to the commencement of any work that such policies have been issued and are currently in effect ....
>
> Policies issued for Subcontractor shall be endorsed to include the following for the benefit of the Contractor ....

Exhibit B, tab 3 to plaintiff's motion for summary judgment, ¶ 11. Under Schedule F to the subcontract, APEC was required to maintain minimum insurance coverages of various types, including Workers' Compensation, Employers Liability, Commercial General Liability,

4

Personal Injury Liability, Broad Form Property Damage, Comprehensive Automobile Liability, and Professional Liability. Exhibit B, tab 2 to plaintiff's motion for summary judgment. For each of these types of coverage, APEC was required to name the "Contractor, Owner and Architect" as additional insureds. Exhibit B, tab 3 to plaintiff's motion for summary judgment, ¶ 11. Additionally, defendant Harbert required the policies to be endorsed that "the Subcontractor's insurance is primary and any insurance maintained by Contractor or Owner is considered excess and noncontributory." *Id.*

The parties do not dispute that APEC obtained each of the coverages required by the subcontract, naming defendants as additional insureds, and submitted evidence of the coverages to defendant Harbert, in accordance with the subcontract. Exhibits C and H to plaintiff's motion for summary judgment.

The subcontract did not require APEC to provide fire insurance. Rather, the subcontract states that:

> Contractor shall not be liable or responsible for loss or damage to the equipment, tools, facilities, or other personal property owned, rented, or used by Subcontractor ... in the performance of the Work; and the Subcontractor shall maintain such insurance .... <u>Except to the extent of any proceeds received by Contractor for the benefit of Subcontractor under a policy or builder's risk or fire insurance</u>, Contractor shall not be liable or responsible for any loss or damage to the Work, and Subcontractor shall be responsible for the correction or restoration of any such loss or damage to the Work (emphasis added) ....

Exhibit B, tab 4 to plaintiff's motion for summary judgment, ¶ 25; Exhibit C to defendant's motion for summary judgment, ¶ 25. In fact, pursuant to the contract between defendant Harbert and Huntsville Airport, Harbert was required to obtain an All Risk/Builder's Risk

5

insurance policy, which named Huntsville Airport and all subcontractors as additional insureds. Defendant Harbert complied with this contract requirement as it had in full force and effect a policy of insurance issued to it by defendant USF&G for the period June 16, 1997 to June 16, 1998. Certificate of Liability Insurance, Exhibit F to defendants' motion for summary judgment. This policy was also in effect at the time defendant Harbert entered the subcontract with APEC and included insurance in case of fire. However, when this policy was reissued for the period July 30, 1998 to July 30, 1999, no additional insureds were named, even though required by the contract between defendant Harbert and Huntsville Airport. *See* Exhibit H to defendants' motion for summary judgment; Exhibits D and J to plaintiff's motion for summary judgment.

No evidence has been presented that APEC was contractually required to maintain fire insurance for the forms it constructed as part of the Work. However, APEC obtained such a policy in its own name from plaintiff. Defendants argue that this coverage was included within the Commercial General Liability policy APEC was required to maintain. Defendant USF&G denied plaintiff's claim for amounts paid to APEC under APEC's fire insurance policy for the construction forms, supplies and scaffolding damaged by the fire, contending APEC was not a named insured under the policy and that the forms were not in the care, custody and control of defendant Harbert. Deposition of Nata at 51-52, submitted as exhibit L to plaintiff's motion for summary judgment.

The Builder's Risk Insurance Policy Harbert had at the time of the fire, which should have named subcontractors as additional insureds but did not, defines "covered property" as:

> property that is owned by "you" or is property of others in "your" care, custody and control for which "you" are legally responsible consisting of:
> 1. Buildings or structures ... while under construction, erection or fabrication at the "project site".
> 2. Materials, supplies, fixtures, equipment, or machinery which will become a permanent part of the "project site" while:
>    a. At the "project site" awaiting, during and after construction, installation, erection or fabrication;
>    ....
> 3. Temporary structures such as office trailers ... tool trailers, fences, scaffolding, cribbing and construction forms such as false work at the "project site".

Exhibit D, tab 1 to plaintiff's motion for summary judgment.

The court finds from the evidence submitted in this case that APEC was hired by defendant Harbert solely to construct the formwork for concrete to be poured. The forms were subject to scheduling and inspection by defendant Harbert. *See e.g.*, Exhibit I to plaintiff's motion for summary judgment, Example of Scheduling Chart. A separate business entity, concrete finishers, actually put in steel reinforcements and poured the concrete. After the concrete is poured, APEC retrieves its forms. APEC's access to the site was limited by defendant Harbert – for example, APEC was not permitted to access the site after 3:30 p.m. *See* depo. of Jarun[2] at 16, 82-90.

The court finds from the above cited contracts that defendant Harbert's All Risk/Builder's Risk Insurance Policy was intended to cover events such as the fire which destroyed APEC's forms. The court reaches this conclusion based on the following:

---

[2]Belal Jarun is the sole shareholder and CEO of APEC. Depo. of Jarun at 12-13.

Defendant Harbert was required to maintain a policy of insurance, including loss from fire, in its own name and also in the name of Huntsville Airport and all subcontractors. Defendant Harbert did, in fact, have such a policy of insurance at the time it entered into the subcontract with APEC.

APEC was not required to have any fire insurance pursuant to the subcontract, although it did.[3] The court can find no reason that APEC's fortuitous purchase of fire insurance should inure to the benefit of defendants. Because APEC had no obligation to insure the "work" against fire, its policy is an excess policy to defendant Harbert's policy.

Walter Nata, a regional property specialist for defendant USF&G, testified:

Q. Did USF&G pay any money to any subcontractors?
A. No.
Q. For damage from this fire?
A. No. Strike that. Pardon me, we paid money to our insured and our insured, I'm sure, paid his subcontractors for the, for the work that was done.
Q. Okay. Do you recall if USF&G paid to have the forms rebuilt?
A. Yes, we did.

Nata deposition at 52-53, submitted as exhibit L to plaintiff's motion for summary judgment, exhibit B to defendants' motion for summary judgment.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

[3]The court can find no fault on the part of APEC for its failure to provide a copy of this policy to defendant Harbert. APEC, having no obligation under the subcontract to obtain fire insurance, certainly had no obligation to provide Harbert evidence of this policy.

moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.R.Civ.P. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). All reasonable doubts about the facts and all

justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

### III. Legal Analysis

Because this case was submitted to the court on cross-motions for summary judgment, and the court finds that the underlying facts of this case are not in dispute, the court finds that this case may be wholly resolved by ruling on the pending motions. *See also* stipulation of the parties (doc. 21).

The plaintiff argues that when the contract between defendant Harbert and Huntsville Airport is read in conjunction with the subcontract between Harbert and APEC, the parties' intent that Harbert provide fire insurance which protects APEC from loss of the "work" is evident. *See* plaintiff's memorandum at 11. Hence, Harbert's failure to abide by the terms of its contract with Huntsville Airport and naming APEC as an "also insured" caused plaintiff, as APEC's insurer, to suffer a loss of $637,019.02.[4] *Id.* Therefore, plaintiff asserts it is entitled to summary judgment in its favor and against the defendant on Count I of the complaint, for breach of contract.

The court finds that because Harbert breached its contract with Huntsville Airport, APEC as an intended third party beneficiary, and thus plaintiff, as APEC's subrogee, is entitled to be compensated for the loss suffered by APEC and hence plaintiff due to Harbert's breach. Alabama law clearly anticipates such third party beneficiary suits in the realm of

---

[4]In other words, but for Harbert's failure to comply with the contract terms, Travelers policy with APEC would have been excess to Harbert's and hence, Travelers would not have had to pay on its policy with APEC.

insurance. *See e.g., Airlines Reporting Corporation v. Higginbotham,* 643 So.2d 952 (Ala.1994), citing *State Farm Fire & Casualty Co. v. Green,* 624 So.2d 538 (Ala.1993).

A party seeking to recover in contract as a third-party beneficiary must establish that the contracting parties intended, at the time of the contract, to bestow a direct, as opposed to an incidental, benefit on him. *Weathers Auto Glass, Inc. v. Alfa Mutual Insurance,* 619 So.2d 1328 (Ala.1993); *Colonial Bank v. Ridley & Schweigert,* 551 So.2d 390 (Ala.1989). The court finds ample evidence of such intent here, as evidenced by the contract between defendant Harbert and Huntsville Airport requiring that subcontractors be named insureds under the All Risk/Builder's Risk policy, and the policy issued by USF&G to Harbert for the period June, 1997 to June, 1998, which named Huntsville Airport and subcontractors as insureds under the policy.

Plaintiff also argues that, under the language of the insurance policy issued to Harbert by USF&G, APEC's forms are clearly within the definition of "covered property." Plaintiff's memorandum at 12. *See* "covered property," *supra,* at 6. However, USF&G denied payment to plaintiff for the amount it paid to APEC for the damaged forms based on the arguments that APEC was not a named insured and that the forms were not within defendant Harbert's care, custody and control. Plaintiff's memorandum at 12. Defendant USF&G also argues that any item owned by a subcontractor and used at a job site is not covered by the insurance policy unless it becomes a permanent part of the job site. Deposition of Nata at 42. The court can find no support for any of defendant USF&G's arguments. Clearly, "covered property" is defined much more broadly by the policy of insurance than by Nata,

11

and Nata cannot modify the terms of the policy by stating what was intended by the term "covered property" as that term is not ambiguous as defined in the contract. Alabama law is clear that parol evidence cannot modify a contract that is not ambiguous.[5] *Sheridan v. Board of Water & Sewer Comm'rs of the City of Prichard*, 764 So.2d 526 (Ala.2000) ("When a written agreement is determined to be clear and unambiguous, parol evidence is not admissible to vary the terms of the agreement"); *Environmental Sys., Inc. v. Rexham Corp.*, 624 So.2d 1379, 1381 (Ala.1993); *see also Bussey v. John Deere Co.,* 531 So.2d 860, 862 (Ala.1988). The court finds no basis in this case to consider the testimony of Nata which contradicts the clear and unambiguous terms of the insurance policies and contracts.

Additionally, the court finds from the evidence that the forms were "covered property" as Nata testified that USF&G paid Harbert for the loss of those forms.[6] Thus, the court finds defendants' argument that the forms were not within defendant Harbert's care, custody and control to be refuted by the fact that Harbert was compensated for the loss of the forms.[7]

---

[5] Whether a contract is ambiguous is a question of law for the court. *Terry Cove North, Inc. v. Baldwin County Sewer Auth., Inc.,* 480 So.2d 1171, 1173 (Ala.1985). *See also Lloyd Noland Foundation, Inc. v. City of Fairfield Healthcare Auth.*, 2002 WL 254104, *10 (Ala.2002).

[6] The court notes that Harbert has thus far received a windfall for the amount of the forms, as it has not reimbursed APEC for their loss.

[7] The court is unpersuaded by defendants' argument that the concrete forms were directly owned and provided by APEC to the Huntsville Airport site and thus defendant Harbert was not compensated for the forms. Defendants' memorandum at 6. This argument is in direct contradiction to the testimony of Nata, who stated that USF&G compensated Harbert for the loss of the forms.

The court is also unpersuaded by defendants' argument that "work" as defined in the contract means solely material and equipment provided by the contractor. Defendants' memorandum at 12. The clause on which defendants rely for this tortured construction actually states "The term work means the construction services required by the Contract Documents, whether completed or partially completed, and <u>includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations</u>. The work may constitute the whole or part of the project (emphasis added)." *See* Exhibit F to defendants' motion for summary judgment, ¶ 1.1.3. The fact that the contractor chose to subcontract portions of its obligations for the construction of the parking deck does not remove those portions from the definition of "work" under the contract.[8] Further, the fact that the forms are considered part of the "work" is evident from the testimony of Walter Nata. He stated that he hired Jack Roner to count and inspect the forms to "try to figure out everything that's there .... [A]s we were going through the reconstruction process, we knew that we'd be facing that issue in the reconstruction process and how many forms would have to be brought up as we do the reconstruction, that sort of thing...." Depo. of Nata at 38. Nata then states that the definition of "covered property"includes "cribbing and construction forms such as falsework at the construction

---

[8]The court notes that under this argument, the term "the work" would include nothing at all as the forms for the concrete for the parking deck, the supports for the concrete for the parking deck, and the concrete for the parking deck were all to be provided by subcontractors.

site." *Id.* at 45. Further, when asked, "Does construction forms and falsework, does that include forms for forming concrete?" he replied, "Absolutely."[9] *Id.*

The court finds defendants' argument that they had no control over the manner in which APEC performed its work to be irrelevant. Even if this court could ignore the fact that Harbert controlled access to the site, ignore the fact that Harbert retained the right to inspect the forms after they were constructed, before concrete was poured, and ignore the fact that Harbert retained the right to notify APEC as to when the forms could be removed, the fact remains that USF&G has reimbursed defendant Harbert for the loss of the forms, with the impression that Harbert would reimburse the subcontractor for its loss. Depo. of Nata at 53. The fact that Harbert chose to keep this money, rather than pay its subcontractor for the loss, is a matter for resolution between the two defendants. However, the court can find no basis to penalize plaintiff as subrogee of APEC for defendant Harbert's business judgment.

## IV. Conclusion

The court having considered the arguments of the parties, the facts of this case and the relevant law, the court finds that the defendants are liable to the plaintiff in the amount of $637,019.62. The court therefore **GRANTS** the plaintiff's motion for summary judgment. The court **DENIES** the defendants' motion for summary judgment. Judgment is hereby rendered in favor of the plaintiff Travelers Indemnity Company of Illinois and against the

---

[9]Nata does state that this would only apply to such forms under the care, custody and control of its insured, defendant Harbert. Nata depo. at 46. However, the court notes that the only reason APEC was not a named insured on this policy was due to defendant Harbert's breach of its obligation under its contract with Huntsville Airport that all subcontractors be named insureds under its policy.

defendants United States Fidelity & Guaranty Insurance Company and Bill Harbert Construction in the amount of $637,019.62, plus interest and costs.

**DONE** and **ORDERED** this the ___23___ day of May, 2002.

_____
INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE